UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DENISE DOALL,

                Plaintiff,         <u>MEMORANDUM & ORDER</u>
                                    23-CV-0364(JS)(SIL)

    -against-

NEW YORK STATE UNIFIED COURT
SYSTEM; OFFICE OF COURT
ADMINISTRATION,

                Defendants.
--------------------------------X

APPEARANCES
For Plaintiff:      Denise Doall, <u>Pro Se</u>
                  71 Vinton Street
                  Long Beach, New York  11561

For Defendants:     Beth M. Kaufman, Esq.
                  New York State Office of the Attorney General
                  200 Old Country Road, Suite 240
                  Mineola, New York  11501

SEYBERT, District Judge:

      The New York State Unified Court System ("NYSUCS") and the Office of Court Administration ("OCA") (together, "Defendants") move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of <u>pro se</u> Plaintiff Denise Doall ("Plaintiff") (hereafter, the "Dismissal Motion"). (<u>See</u> Dismissal Motion, <u>in toto</u>, ECF No. 18.)  After careful consideration, for the reasons that follow, Defendants' Dismissal Motion is GRANTED, which disposes of all federal claims in this case.  Consequently, the Court declines to exercise supplemental jurisdiction over the remaining state law claims against the

Defendants and Plaintiff's Complaint is dismissed in its entirety as set forth below.

## BACKGROUND[1]

The facts set forth below are taken from Plaintiff's Complaint, matters of which the Court may take judicial notice, and Plaintiff's pro se Opposition to the instant motion.  See Felton v. Loc. Union 804, Int'l Bhd. of Teamsters, No. 22-CV-2779, 2024 WL 2813896, at *3 (2d Cir. June 3, 2024) ("A court may consider . . . on a Rule 12(b)(6) motion to dismiss . . . materials appropriate for judicial notice."); Walker v. Schult, 717 F.3d 119, 122, n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

Plaintiff challenges the denials of her requests for an exemption from the NYSUCS's vaccine mandate requiring all judges and court employees to obtain a COVID-19 vaccination (the "Vaccine Mandate").[2]  Those employees with approved exemptions for religious

---

[1]  The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of this Motion; moreover, all reasonable inferences are drawn in favor of the Plaintiff.

[2]  "SARS-COV-2 ('COVID-19' or 'COVID') is a deadly virus that has killed over 950,000 Americans and over 54,000 New Yorkers since March of 2020."  Ferrelli v. Unified Ct. Sys., No. 22-CV-0068, 2022 WL 673863, at *1 (N.D.N.Y. Mar. 7, 2022) (citing COVID-19 Fatalities, New York State Department of Health, found at https://coronavirus.health.ny.gov/fatalities-0, and COVID-19 Dashboard, Johns Hopkins University of Medicine, found at

or medical reasons were shielded from the consequences of non-compliance, which included denial of access to NYSUCS premises and disciplinary action including lost wages, lost benefits, suspension, and termination. Ferrelli, 2022 WL 673863, at *5. The denials of Plaintiff's exemption requests resulted in the termination of her employment on April 7, 2022. (Compl., ECF No. 1, at 6, ¶ III.E.)[3]

Plaintiff's Complaint was filed on January 19, 2023 against the Defendants on the Court's complaint form for employment discrimination claims. (Compl., ECF No. 1.) In her Complaint, Plaintiff has checked the boxes on the form to allege that her discrimination and retaliation claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the Age Discrimination in Employment Act of 1967, 28 U.S.C. §§ 621 to 634 ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 ("ADA"). (Id. at ¶ II.) Plaintiff also alleges that her claims are brought pursuant to:

> The Constitution of the United States of America, including but not limited to the 1st & 14th Amendments; GINA Title II of the

---

https://coronavirus.jhu.edu/map.html (each last viewed by that Court on March 7, 2022)).

[3] Citations to the record in this Memorandum and Order will use the pagination assigned by the Court's Electronic Case Filing System ("ECF"), which may differ from the page numbers included by the parties.

> Genetic Information Non Discrimination Act of
> 2008; the Rehabilitation Act; Black Letter
> Federal Law; HIPPA Law 1996; Taylor Law.

(Id. at 4.)  Plaintiff alleges she is "Catholic/Christian", and her birth year is 1967.  (Id. at ¶ III.D.) Plaintiff wrote only "Hip" in the space that calls for the specific disability or perceived disability claimed.  (Id.)

In addition, Plaintiff has checked the boxes on the form to allege that the Defendants unlawfully terminated her employment, failed to accommodate her disability and to promote her, retaliated against her, and caused her to suffer unequal terms and conditions of employment.  (Id. ¶ III.A.)  In the space that asks for any other acts of which Plaintiff complains, Plaintiff wrote: "Forced to Covid-Test weekly (on own time) & to disclose personal confidential medical information to supervisor & to upload into Employers portal/Database."  (Id.)  Plaintiff lists the approximates dates for the challenged actions as follows:

(1)  Forced to disclose personal/confidential medical: on or about 9/21 through 4/22;

(2)  Employer refused reasonable accommodations: on or about 9/21 through 4/22;

(3)  Religious exemption denied: 12/29/21;

(4)  1st Medical Exemption denied: 1/10/22;

(5)  2nd Medical Exemption denied: 2/9/22;

(6)  3rd Medical Exemption (Refused to Process): 2/24/22;

4

(7)  FMLA Papers (Refused to Process): 3/28/22;

(8)  Terminated: 4/7/22;

(9)  Altered completed/signed off on Time & Leave Card: on or about 4/22;

(10) Time & Leave stolen/deleted after termination: on or about 4/22;

(11) Payroll discrepancy filed – Employer refused to restore/compensate on or about 5/22;

(12) Failure to Promote (Interview); 12/22/22.

(Id. ¶ III.B.)  Plaintiff sets forth the facts underlying her claims in a single page, reproduced here, in its entirety:

> My employer arbitrarily and capriciously changed the terms of my employment by mandating an intrusive bodily procedure to inject foreign substances into my body.
>
> It is not legal to require an unlicensed vaccine.  All Covid-19 vaccines have not been approved or licensed by the FDA.  They have been authorized for emergency use only.
>
> As a child of God created in his divine image; I must honor my body as a temple of God.  The life of the flesh is in the blood (Leviticus 17:11) and I can not alter my genetic code; DNA.
>
> Covid-19 vaccines are only available under Emergency Use Authorizations (EUA) with a MessengerRNA/MRNA delivery system.   MRNA alters Human Genome coded in DNA.   It is discriminatory to deny someone a job because they choose to function with their God-given genetic makeup from birth.
>
> My employer forced me to disclose my personal/confidential medical from on or about September 2021 through April 2022.

My employer refused me a reasonable accommodation including, but not limited to working from home from: on or about September 2021 through April 2022. After my employer required me to work from home during the height of the pandemic from: on or about March 2020 through June 2021 with positive and successful results.

My employer denied and refused to accommodate my sincere Religious beliefs and denied my exemption on 12/29/21;

My employer denied my 1st medical exemption on 1/10/22. At that time I had Covid.

My employer denied my 2nd medical exemption on 2/9/2022. At that time I had just recovered from Covid.

My employer refused to process my 3rd medical exemption on 2/24/22. At that time I possessed natural immunity.

My employer refused to process my FMLA documentation for the period of March 28, 2022 through May 6, 2022.

My employer terminated me on April 7, 2022 after 24 years of service and within 6 months of my retirement.

My employer altered my completed/signed off on time and cards: on or about 4/22.

My employer stole/deleted my accrued time and leave credits after my termination: on or about 5/22.

My employer refused to interview and promote me for a position that I worked and tested for: on or about 12/22.

(Id. at 6 (designated as "5(A)" by Plaintiff).)

For relief, Plaintiff seeks to be reinstated[4] with back pay to the current pay scale including incremental increases, raises, benefits, and bonuses.  (Id. ¶ V.)  Further, Plaintiff seeks restoration of time, leave, and retirement credits, as well as reimbursement for union and medical benefits, COBRA payments, contract bonuses, and any further "relief as deemed equitable by the Court."  (Id.)

## PROCEDURAL HISTORY

Plaintiff was issued a right-to-sue letter on October 15, 2022 from the Equal Employment Opportunity Commission and has annexed a copy of said letter to her Complaint.  (Id. at 9.)  On January 19, 2023, Plaintiff filed her Complaint in this Court together with an application to proceed in forma pauperis.  (ECF Nos. 1-2.)  By Order dated June 8, 2023, the undersigned granted Plaintiff's application to proceed in forma pauperis and ordered service of the summonses and Complaint upon the Defendants.  (ECF No. 6.)[5]

---

[4] Defendants assert, and Plaintiff does not dispute, that Plaintiff was reinstated to her former position as a Senior Court Clerk on June 22, 2023, and that she accepted a promotion to the position of Associate Court Clerk beginning on November 9, 2023.  (Support Memo, ECF No. 18-1 at 1 n. 3-4.)

[5]  The Court also dismissed Plaintiff's claims against Justin Barry, Nancy Barry, and the "Secret 'Unqualified' Committee Panel" without prejudice because her Complaint did not include any factual allegations against any of these parties and, thus, did not comply with Rule 8 of the Federal Rules of Civil Procedure.  Plaintiff

With leave of the Court (see Elec. Orders dated Oct. 4, 2023, Oct. 18, 2023, Dec. 8, 2023, and Dec. 13, 2023), Defendants filed the instant, fully-briefed Dismissal Motion on January 2, 2024 including Plaintiff's Opposition (hereafter, the "Opposition"), and the Defendants' Reply. (See Dismissal Motion, ECF No. 18; see also Support Memo, ECF No. 18-1; Opp'n, ECF No. 18-3; Reply, ECF No. 18-4.) Defendants contend Plaintiff has failed to state a claim under each of the laws cited by Plaintiff in her Complaint. (See Support Memo; Reply.) Further, Defendants assert Plaintiff's claims brought pursuant to the ADA and the ADEA are also barred by sovereign immunity. (Id.)

Plaintiff appears to have abandoned her claims brought under "Black Letter Federal Law, . . . [and the] Taylor Law" as she had alleged in the Complaint because she now asserts in her Opposition that her rights were violated under:

1. (Religion) The Constitution of the United States of America including but not limited to the 1st and 14th Amendments;
2. (Religion) Title VII of the Civil Rights Act;
3. (Religion) 42 US Code section 2000a;
4. (Religion) 42 US Code section 2000e-2;
5. (Age) The Age Discrimination in Employment Act of 1967;
6. (GINA) Title II of the Genetic Information;
7. Nondiscrimination Act of 2008;
8. (Disability) The American's with Disabilities Act;
9. (Disability) The Rehabilitation Act.

---

was granted leave to file an Amended Complaint in order to cure this defect. (Id.) However, Plaintiff has not done so.

(<u>Compare</u> Compl., ¶ II, <u>with</u> Opp'n at 1.)  Plaintiff also asserts: "My HIPPA rights were violated by being forced to test weekly; share results with my courthouse and upload results into a portal. In addition to being forced to provide my medical status weekly; I was forced to provide my personal medical documentation in order to request a medical exemption."  (Opp'n at 3-4.)

While Plaintiff largely repeats the facts alleged in her Complaint, her Opposition also includes citation to, and a summary of, a 2023 New York State Public Employment Relations Board opinion relating to the obligation of NYSUCS to bargain with employee unions concerning the implementation of procedures relating to the adoption of vaccine and testing mandates.  Further, Plaintiff includes the following additional facts in her Opposition: (1) after being terminated, Plaintiff "was deactivated off of and passed over on all of the promotional lists I was on.  Thereby loosing access to choice Courts and Locations"; and (2) Defendants "further compromised my rights by allowing <u>unvaccinated</u> attorneys, agencies, departments, visitors, family members, friends, support personnel, jurors, general public and press in to the courthouses <u>while simultaneously barring and terminating me</u>."  (<u>Id.</u> at 4 (emphasis in original).)  Finally, Plaintiff asserts for the first time:

> After careful exemption comparisons with
> multiple similarly situated co-workers in
> several different counties and courthouses;

> one conclusion can be drawn. There was a
> disproportionate number of exemptions
> approved for my co-workers who currently or
> previously held the tile of Court Officer and
> who currently carry a firearm. I believe that
> "The Committee" did have prior knowledge of
> everyone's status and that my exemption was
> denied, in part, because I do not carry a
> weapon. Additionally, after careful exemption
> comparisons with multiple similarly situated
> co-workers in several different counties and
> courthouses; a second conclusion can be drawn.
> There was a disproportionate number of
> exemptions disapproved for my co-workers
> nearing a retirement benchmark; 5, 10, 15, 20,
> 25, 30 years. I believe that "The Committee"
> did have prior knowledge of everyone's status
> and that my exemption was denied, in part,
> because I was eligible to retire within 6
> months.

(Id.) Thus, Plaintiff concludes that the vaccination mandate has

been rescinded because "it was illegal and a violation of the U.S.

Constitution and the Civil Rights Act." (Id.) Further, she

asserts that, as of December 2, 2023, she has "not been made whole"

because, for the time she "was illegally terminated", her

retirement credits have not been restored, nor has she been

reinstated "to the current pay including increments, raises,

benefits, and bonuses[.]" (Id.)[6] Plaintiff further contends she

has not received the time and leave credits that she would have

accrued in addition to the back pay and other payments to which

Plaintiff claims entitlement for the period during which her

employment was terminated. (Id.)

---

[6] (See supra note 4.)

DISCUSSION

I.   Legal Standard

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023) ("On a motion to dismiss pursuant to Rule 12(b)(6), the district court's task is to assess the pleadings to determine whether they contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558.  Similarly, a complaint is

11

also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.  "Although all allegations contained in the complaint are presumed true" at the motion to dismiss stage, "this principle is 'inapplicable to legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  Szewczyk v. City of N.Y., No. 15-CV-0918, 2016 WL 3920216, at *2 (E.D.N.Y. July 14, 2016) (quoting Iqbal, 556 U.S. at 678) (alteration in original).

Where "[a] plaintiff proceeds pro se . . . a court is obliged to construe his [or her] pleadings liberally." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).  Because Plaintiff's submissions were filed pro se, the Court will liberally construe them "'to raise the strongest arguments that they suggest.'"  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Notwithstanding, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011).

II.  Analysis

A.  Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall
> not be construed to extend to any suit in law
> or equity, commenced or prosecuted against one
> of the United States by Citizens of another
> State, or by Citizens or Subjects of any
> Foreign State.

U.S. CONST. amend. XI.   "'The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns . . . .'" State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (quoting W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004)) (ellipses in original).   Thus, "[t]he Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." Russell v. Dunston, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); see also Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001).   This bar also applies to claims against State agencies and gives a state government immunity from suit, not just from liability.   Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 144 (1993) (citation omitted); Quirk v. DiFiore, 582 F. Supp. 3d 109, 113 (S.D.N.Y. 2022) ("Eleventh Amendment immunity, if applicable here, would preclude all of [plaintiff's] claims regardless of whether the sought-after relief is monetary or injunctive." (citing Pennhurst

13

State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984); further citation omitted)).

"It is well-established that, as an agency or arm of the State of New York, the New York Unified Court System, [and] the Office of Court Administration, . . . are immune from suit under the Eleventh Amendment." Tomczyk v. N.Y. Unified Ct. Sys., No. 19-CV-2753(JS)(AYS), 2019 WL 2437849, at *5 (E.D.N.Y. June 10, 2019) (citing Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) ("[T]he New York State Unified Court System is an arm of the State . . ., and is therefore protected by Eleventh Amendment sovereign immunity")); Quirk, 582 F. Supp. 3d at 113 ("The Second Circuit has recognized the New York State Unified Court System, of which OCA is the administrative arm, is a state instrumentality protected by Eleventh Amendment sovereign immunity." (citing Pietri v. N.Y.S. Off. of Ct. Admin., 936 F. Supp. 2d 120, 127 (E.D.N.Y. 2013); further citation omitted)).

### 1.   The Constitutional Claims

Plaintiff's claims alleging a denial of her First and Fourteenth Amendments rights pursuant to 42 U.S.C. § 1983 ("Section 1983") are barred by the Eleventh Amendment.[7]  See Trivedi v.

---

[7]  That sovereign immunity bars Section 1983 claims against the Defendants should come as no surprise to Plaintiff given that such claims were dismissed for this reason in a prior case brought by Plaintiff.  See Doall v. Suffolk County Fam. Ct., No. 05-CV-5891, 2008 WL 11412188, at *4 (E.D.N.Y. Nov. 26, 2008).

N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 734 (S.D.N.Y. 2011) (dismissing Section 1983 claims against OCA as barred by sovereign immunity), aff'd sub nom., Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir. 2014)); Mora v. N.Y.S. Unified Ct. Sys., No. 22-CV-10322, 2023 WL 6126486, at *7 (S.D.N.Y. Sept. 19, 2023) (dismissing Section 1983 claim alleged against NYSUCS and OCA as barred by Eleventh Amendment's sovereign immunity) (quoting Gollomp, 568 F.3d at 366)). Moreover, Plaintiff's Section 1983 claims are not plausible because the Defendants are not "persons" within the meaning of the statute. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Coughlin v. N.Y.S. Unified Ct. Sys., No. 22-CV-4002, 2023 WL 7091904, at *7 (E.D.N.Y. Oct. 26, 2023) (finding "the claims against [NYS]UCS and OCA are barred because they are not persons within the meaning of 42 U.S.C. § 1983") (internal quotation marks and citation omitted). Since Plaintiff's Section 1983 claims are barred by the Eleventh Amendment, they are not plausible and are thus dismissed without leave to amend.

### 2.   The ADA and ADEA Claims

Similarly, Plaintiff's claims brought pursuant to the ADA and the ADEA are barred by the Eleventh Amendment.[8]  With

---

[8]   Again, like her Section 1983 claims, it should come as no surprise to Plaintiff that her ADA claims are barred by the

regard to the ADA, "[t]he Supreme Court has unequivocally held that Title I of the ADA does not abrogate Eleventh Amendment immunity, Bd. of Trustees v. Garrett, 531 U.S. 356, 374, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001), and New York State has not waived immunity for ADA claims, Nicolae v. Office of Vocational & Educ. Servs. for Individuals with Disabilities, 257 F. App'x 455, 457 (2d Cir. 2007)." Pietri, 936 F. Supp. 2d at 128-29 (citing Kilcullen v. N.Y. Dep't of Transp., 55 F. App'x 583, 584 (2d Cir. 2003)); Mone v. N.Y.S. Unified Ct. Sys., No. 21-CV-6914, 2023 WL 4424093, at *4 (E.D.N.Y. Mar. 22, 2023), report and recommendation adopted, No. 21-CV-6914, 2023 WL 4073770 (E.D.N.Y. June 20, 2023) (dismissing ADA discrimination and retaliation claims against employer NYSUCS as barred by state sovereign immunity under the Eleventh Amendment), aff'd, No. 23-CV-964, 2024 WL 1109258 (2d Cir. Mar. 14, 2024); Canales-Jacobs v. N.Y. Office of Court Admin., 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009) ("Title I [of the ADA] does not abrogate the sovereign immunity enjoyed by the State of New York or its agencies and officials.")).

Likewise, as to the ADEA, the Supreme Court has long held that a claim brought under the ADEA against a state is barred by the Eleventh Amendment. See Kimel v. Fla. Bd. of Regents, 528

---

Eleventh Amendment given that such claims raised in a prior action brought by Plaintiff were dismissed for this same reason. See Doall, 2008 WL 11412188, at *4.

U.S. 62, 91 (2000) ("[W]e hold that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment.  The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid."); see also McGinty v. State of N.Y., 251 F.3d 84, 92 (2d Cir. 2001) (recognizing the "Supreme Court unequivocally stated that 'the ADEA does not validly abrogate the States' sovereign immunity'" (citing Kimel, 528 U.S. at 91)).  Nor has New York State consented to being sued under the ADEA.  See Darcy v. Lippman, 356 F. App'x 434, 436 (2d Cir. 2009) (summary order).

Thus, Plaintiff's ADA and ADEA claims against the Defendants are dismissed without leave to amend because they are barred by the Eleventh Amendment.  See Darcy, 356 F. App'x at 436 (holding ADA and ADEA claims against the New York Unified Court System were barred by the Eleventh Amendment); Canales-Jacobs v. N.Y.S. Off. of Ct. Admin., 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009) ("[P]laintiff's ADA claims seeking retroactive and prospective relief against the Office of Court Administration must be and are dismissed for lack of subject matter jurisdiction. . . .  The Eleventh Amendment also bars all claims asserted under the ADEA, 29 U.S.C. §§ 621-634, which prohibits discrimination based on age, from being asserted in federal court against a state, its agencies and any state officers acting in their official capacities."); see also Trivedi, 818 F. Supp. 2d at 727 (finding ADA claim barred by

sovereign immunity because "[t]he OCA is a government entity that, pursuant to sovereign immunity, is not amenable to suit").[9]

### B.   Rehabilitation Act Claims

Section 504 of the Rehabilitation Act prohibits disability-based discrimination by government agencies and other recipients of federal funds, and provides, in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a); Gentleman v. State Univ. of N.Y. Stony Brook, No. 21-CV-1102, 2022 WL 1447381, at *3 (2d Cir. May 9, 2022) (summary order). The legal standards and analysis for claims under the Rehabilitation Act, the ADA, and the New York State Human Rights Law ("NYSHRL") are the same. Gentleman, 2022 WL 1447381, at *3; see also Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech., 683 F. Supp. 3d 224, 232 (E.D.N.Y. 2023) ("Courts interpret the NYSHRL 'coextensively' with the Rehabilitation Act, Williams v. MTA Bus Co., 44 F.4th 115, 124 (2d Cir. 2022), and treat claims under both statutes through the same legal standards as claims under the [ADA]." (citing Noll v. Int'l Bus. Machines

---

[9]   However, New York has waived sovereign immunity for damages suits brought under the Rehabilitation Act. See Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 331-32 (E.D.N.Y. 2014) (collecting cases). The Court proceeds to address said claims.

Corp., 787 F.3d 89, 94, 95 n.2 (2d Cir. 2015) (citations omitted));
see also Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir.
2002); Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir.
1999)".[10]

### 1. The Discrimination Claim

To establish a prima facie discrimination claim under
the Rehabilitation Act, a plaintiff must show (1) the plaintiff is
a "qualified individual" with a disability; (2) the defendant
"receive[s] federal funding;" and (3) the plaintiff was "denied
the opportunity to participate in or benefit from defendants'
services, programs, or activities, or was otherwise discriminated
against by defendants, by reason of [] [her] disability."
Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)
(citations omitted).  Here, Defendants assert Plaintiff "fails to
allege that she is disabled within the meaning of the
Rehabilitation Act." (Support Memo at 17.)  The Court agrees.

"A person has a 'disability' under the ADA (or
Rehabilitation Act) if he has: (a) 'a physical or mental impairment
that substantially limits one or more [of his] major life
activities,'(b) 'a record of such an impairment,' or (c) is
"regarded as having such an impairment.'" Veldran v. Dejoy, 839 F.

---

[10]   Thus, even if Plaintiff's ADA claims were not barred by the
Eleventh Amendment, the following analysis shows that such claims
still would have failed.

App'x 577, 579 (2d Cir. 2020) (citing 42 U.S.C. § 12102(1); 29
U.S.C. § 705(9)(B) (emphasis added)). "Major life activities
include 'caring for one's self, performing manual tasks, walking,
seeing, hearing, speaking, breathing, learning, and working.'" Id.
(citing 45 C.F.R. § 84.3(j)(2)(ii)).  "'An impairment need not
prevent, or significantly or severely restrict, the individual
from performing a major life activity in order to be considered
substantially limiting'; however, 'not every impairment will
constitute a disability.'"   Id. (citing 29 C.F.R. § 1630.2
(j)(ii)).  Importantly:

> Only where an employer knew, or reasonably
> should have known, that the employee has a
> disability within the meaning of the ADA [or
> Rehabilitation Act] does the employer have a
> duty to "engage in an interactive process with
> the[ ] employee[ ] and in that way work
> together to assess whether an employee's
> disability can be reasonably accommodated."

Id. (quoting Costabile v. N.Y.C. Health & Hosps. Corp., 951 F.3d
77, 81 (2d Cir. 2020) (cleaned up)).

     Here, the Complaint alleges only that Plaintiff's
disability is "hip" without any further explanation. (See Compl.
¶ III.D.)  Wholly absent are any allegations from which the Court
could reasonably construe that any impairment of Plaintiff's hip
limits one or more of her major life activities, much less
"substantially".  (Id., in toto.)  Nor are there any facts
suggesting Plaintiff's "employer knew, or reasonably should have

known" about her alleged hip impairment.  (Id.)  Thus, Plaintiff's disability discrimination claim based upon a hip impairment fails as a matter of law; hence, this claim is dismissed.

Moreover, even liberally construing Plaintiff's Complaint to include a claim that her status as a non-vaccinated individual caused her to be perceived or regarded as disabled, such claim similarly misses the mark.  In a recent, similar case dismissing ADA and Rehabilitation Act causes of action brought against the NYSUCS by former employees claiming their termination for noncompliance with the NYSUCS's COVID-19 vaccination policy constituted disability discrimination and retaliation, the Court explained: "That an employer requires an employee to follow generally applicable COVID-19 safety rules and enforces those policies when an employee fails to comply does not, without more, support the inference that the employer regards the employee as disabled."  Mone, 2023 WL 4424093, at *9.  In reaching this determination, the Mone court further observed:  "Courts across the country confronted with substantively identical challenges to employer vaccine mandates under the ADA have reached the same conclusion."  Id. (citing Speaks v. Health Sys. Mgmt., Inc., No. 22-CV-0077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort.  Rather, it reflects a personal choice by [plaintiff] that, while [plaintiff's] to make in this context,

21

cannot be considered an impairment under the ADA.") (emphasis in original); Shklyar v. Carboline Co., 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022) (finding plaintiff failed to plausibly allege defendant regarded her as disabled when defendant implemented COVID-19 policies because to find otherwise "would require inferring that [defendant] regarded all of its . . . employees as having a disability"), aff'd, 2023 WL 1487782 (8th Cir. Feb. 3, 2023)); see also Sharikov v. Philips Med. Sys. MR, Inc., 659 F. Supp. 3d 264, 278-79 (N.D.N.Y. 2023) ("The allegation that Defendant perceived Plaintiff as potentially infectious fails to plausibly allege a claim that the Defendant regarded Plaintiff as having an impairment."); D'Cunha v. Northwell Health Sys., No. 22-CV-0988, 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023) (rejecting ADA claim where plaintiff maintained she was "regarded as" having an impairment based on risk of developing COVID-19 in the future); Cagle v. Weill Cornell Medic., 680 F. Supp. 3d 428, 438 (S.D.N.Y. 2023) (dismissing plaintiff's ADA claim since "[r]eligious faith is not a disability" and plaintiff "d[id] not allege that Defendant was aware of her disability or discriminated against her on the basis of her disability"); Newell v. State Univ. of N.Y. Westchester Comm. Coll., No. 22-CV-8524, 2023 WL 4082030, at *3 (S.D.N.Y. Jun. 20, 2023); Librandi v. Alexion Pharm., Inc., No. 22-CV-1126, 2023 WL 3993741, at *5-6 (D. Conn. June 14, 2023). Thus, Plaintiff's perceived disability discrimination claim

arising from her vaccination status fails to plausibly allege she was disabled or regarded as disabled.

Furthermore, the factual allegations set forth by Plaintiff in her Opposition make clear that decisions concerning her employment were not the result of her vaccination status. Rather, according to Plaintiff, the denials of her vaccination exemption requests were either because of her retirement eligibility status or her firearm status. (See Opp'n at 4.) However, neither of these proffered reasons suggests that the conduct of which Plaintiff complains was because of any disability -- actual or perceived. See Lorenz v. Erie Cmty. Coll., No. 14-CV-0210, 2018 WL 2939492, at *4 (W.D.N.Y. June 12, 2018) (dismissing discrimination claims where, "[e]ven assuming that [plaintiff] was targeted by [d]efendants, he 'has not shown that such treatment occurred because of [his] age [or disability], which is a sine qua non for [a] discrimination claim'" (quoting Weichman v. Chubb & Son, 552 F. Supp. 2d 271, 286 (D. Conn. 2008))). Indeed, "a plaintiff's mere subjective belief that he was discriminated against because of his [protected characteristics] does not sustain a . . . discrimination claim." Bethea v. JP Morgan Chase & Co., No. 15-CV-3544, 2019 WL 4805141, at *8 (E.D.N.Y. Sept. 30, 2019) (internal quotations omitted). Thus, Plaintiff's Rehabilitation Act claims alleging discrimination fail to state a claim for relief and are thus DISMISSED pursuant to Rule 12(b)(6).

23

### 2.   The Retaliation Claim

Plaintiff also claims to have suffered retaliation for refusing the COVID-19 vaccination. (Compl. ¶ III.A.)  In this regard, Plaintiff alleges, inter alia, that her employer refused to process her Family and Medical Leave Act papers, altered her time and leave cards, failed to promote her, forced her to disclose personal and confidential medical information, and terminated her employment.  (Id.)  Dismissal of Plaintiff discrimination claim does not preclude her retaliation claim.  See, e.g., Kelly v. N.Y.S. Off. of Mental Health, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016) (stating a claim of retaliation for protected conduct is a separate claim from a discrimination claim and does not depend on the success of the employee's disability claim) (internal quotation marks and citation omitted).

A prima facie case of retaliation under the Rehabilitation Act requires: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Natofsky v. City of N.Y., 921 F.3d 337, 353 (2d Cir. 2019) (quoting Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002) (internal quotations omitted)).  For a retaliation claim, an adverse employment action is one that "well

24

might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and "is broader than the adverse action element of a discrimination claim." Anderson v. City of N.Y., No. 22-CV-3990, 2024 WL 183103, at *11 (S.D.N.Y. Jan. 17, 2024) (internal quotation marks and citation omitted). "To plausibly allege a causal connection between protected activity and an adverse employment action, the plaintiff must allege that the retaliation was the but-for cause of the employer's adverse action, i.e., that 'the adverse action would not have occurred in the absence of the retaliatory motive." Mone, 2023 WL 4424093, at *11 (internal quotation marks and citation omitted); see also Evans v. N.Y.C. Dep't of Educ., No. 22-CV-7901, 2023 WL 8034449, at *9 (S.D.N.Y. Nov. 20, 2023) (dismissing retaliation claim where "COVID policy applied to all employees and [plaintiff's] own pleadings show he was disciplined as a consequence of the refusal to comply with the policy, rather than as retaliation for opposition to it").

Here, even assuming Plaintiff's opposition to the Vaccine Mandate was protected activity, she has wholly failed to allege a causal connection between that activity and the alleged adverse actions. Rather, Plaintiff acknowledges that the challenged employment decisions were made because she "do[es] not carry a weapon" and/or "was eligible to retire within 6 months." (Opp'n at 4.) Neither of these reasons are related to Plaintiff's

alleged protected activity; hence, by her own admission, Plaintiff's opposition to the Vaccine Mandate is not the "but for" cause for any of the challenged actions.  Thus, Plaintiff fails to plausibly allege a retaliation claim under the Rehabilitation Act and such claim, too, is DISMISSED pursuant to Rule 12(b)(6).

      C.   <u>Title VII Claims</u>

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin.  <u>See</u> 42 U.S.C. § 2000e-2.  Plaintiff alleges she is a "Catholic/Christian" and suffered discrimination and retaliation on account of her religion in violation of Title VII.  (<u>See</u> Compl. ¶ III.D.)

      1.   <u>The Religious Discrimination Claim</u>

Plaintiff claims, on December 29, 2021, Defendants failed to accommodate her religious beliefs by denying her request for a religious exemption to the Vaccine Mandate in violation of Title VII.  (<u>See</u> Compl. ¶ III.E.)  A <u>prima facie</u> case for religious discrimination based on a failure to accommodate one's religion requires allegations that plaintiff: "(1) held a <u>bona fide</u> religious belief conflicting with an employment requirement; (2) informed [her] employer[] of this belief; and (3) [was] disciplined for failure to comply with the conflicting employment requirement."  <u>Adams v. N.Y.S. Unified Ct. Sys.</u>, No. 22-CV-9739,

2023 WL 5003593, at *2 (S.D.N.Y. Aug. 4, 2023) (citing Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (cleaned up)).

Defendants do not contest Plaintiff held a bona fide religious belief. (Support Memo at 13.) Rather, they contend "Plaintiff fails to plead that she informed Defendants about an alleged bona fide religious belief, and fails to allege any job requirement with which her purported beliefs conflicted." (Id.) Defendants further argue Plaintiff "fails to allege any facts that could support an inference that she suffered any adverse employment action based on her failure to comply with any existing employment requirement." (Id.)

Defendants' assertion that Plaintiff did not inform her employer about her bona fide religious belief is a nonstarter. Plaintiff alleged she applied for a religious exemption to the Vaccine Mandate, which was denied on December 29, 2021 (see Compl. ¶¶ III.B(3), III.E), thereby satisfying the first two elements of a prima facie case of religious discrimination under Title VII. See Adams, 2023 WL 5003593, at *2 (citing Corrales v. Montefiore Med. Ctr., No. 22-CV-3219, 2023 WL 2711415, at *6 (S.D.N.Y. Mar. 30, 2023) ("[Plaintiff] alleged that she notified [defendant] about her particular religious objections to the COVID-19 vaccine by notifying [a supervisor] of her desire to request a religious exemption to the vaccination policy.")); Riley v. N.Y.C. Health & Hosps. Corp., No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y.

27

Feb. 17, 2023) (finding plaintiff made out a <u>prima facie</u> case of religious discrimination under Title VII by alleging, <u>inter alia</u>, she had requested a religious exemption from the vaccine mandate).

The Court next considers whether Plaintiff has plausibly alleged she suffered an adverse employment action for failure to comply with the conflicting employment requirement on account of her religion.  The Court finds she has not.  Plaintiff alleges her request for a religious exemption to the Vaccine Mandate was denied on December 29, 2021.  (Compl. ¶¶ III.B(3), III.E.)  After that denial, however, Plaintiff abandoned her religious reasons for refusing to comply with the Vaccine Mandate and, instead, sought an exemption for medical reasons.  The denial of Plaintiff's first medical-based request occurred on January 10, 2022.  Yet, during the 12-day period between her December 29, 2021 religious exemption denial and her January 10, 2022 medical exemption denial, Plaintiff does not allege that any employment actions -- adverse or otherwise -- were taken against her, which is fatal to her religious discrimination claim.  Rather, the date of the first alleged adverse employment action was February 24, 2022, when Plaintiff claims her "employer refused to process my 3rd medical exemption." (Compl. ¶ III.E.)  Thus, in the absence of an adverse employment action based upon her religion, Plaintiff has failed to allege a <u>prima facie</u> case of religious discrimination.  Accordingly,

Plaintiff's Title VII claim alleging religious discrimination is DISMISSED pursuant to Rule 12(b)(6).

### 2.   The Retaliation Claim

The Second Circuit recently reiterated:

> To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action . . . that w[as] materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action."

Russo v. Wyandanch Union Free Sch. Dist., No. 23-716-CV, 2024 WL 2350314, at *2 (2d Cir. May 23, 2024) (quoting Carr v. N.Y.C. Transit Auth., 76 F.4th 172, 180 (2d Cir. 2023)).

As with her Title VII discrimination claim, Plaintiff has not met her burden of establishing a prima facie case of retaliation.  For the reasons set forth above (see supra at 27-28), Plaintiff has not alleged any retaliatory action as a result of her request for a religious exemption to the Vaccine Mandate; therefore, her Title VII retaliation claim fails.  Accordingly,

Plaintiff's Title VII retaliation claim is likewise DISMISSED pursuant to Rule 12(b)(6).[11]

D.   The GINA Claim

Plaintiff's claim under GINA similarly lacks merit. "GINA makes it unlawful for an employer to discharge or otherwise discriminate against an employee based on genetic information or testing." Powell v. Lab Corp., 789 F. App'x 237, 240 (2d Cir. 2019) (affirming dismissal of pro se plaintiff's GINA claims for failure to state a claim (citing 42 U.S.C. § 2000ff-1(a)(1))). "The Act defines 'genetic information' to include: (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation of a disease or disorder in the employee's family members." Perry v. John A. Guerrieri, DDS PLLC, 518 F. Supp. 3d 665, 676 (W.D.N.Y. 2021) (granting summary judgment dismissing GINA claims for failure to state a claim); see also Guan v. N.Y.S. Dep't of Env't Conserv., No. 16-CV-2180, 2019 WL 1284260, at *6 (E.D.N.Y. Mar. 20, 2019) (providing same definition of "genetic information" and granting

---

[11] Further, Plaintiff's own allegations confirm that her religious belief and/or her request for a religious exemption were not the "but for" cause for any claimed adverse actions.  To be sure, as noted above (see supra at 24-25); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (holding a "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action"), Plaintiff asserts she was mistreated as a result of her retirement status and/or her firearm status, neither of which have any relation to her religion.

motion to dismiss <u>pro se</u> plaintiff's GINA claim).  A <u>prima facie</u> claim for genetic discrimination under GINA requires a plaintiff allege: "(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from her genetic tests." <u>Perry</u>, 518 F. Supp. 3d at 676–77; <u>Guan</u>, 2019 WL 1284260, at *6 (describing same elements of GINA claim).

Although Plaintiff's allegations satisfy the first two requirements of a GINA <u>prima facie</u> case, she has not -- and cannot -- satisfy the third requirement because "[a]sking whether a person or their family members have received a vaccine—as opposed to asking whether they have had a particular disease—is not a request for genetic information." <u>Russo v. Patchogue-Medford Sch. Dist.</u>, No. 22-CV-01569, 2024 WL 149131, at *6 (E.D.N.Y. Jan. 12, 2024) (citing <u>Rides v. City of Chicago</u>, No. 22-CV-2740, 2023 WL 6126726, at *2–3 (N.D. Ill. Sept. 19, 2023) (holding city's request that employee disclose whether he had received a COVID-19 vaccine did not violate GINA); <u>Harden v. Honeywell Int'l, Inc.</u>, No. 23-CV-0176, 2023 WL 3310172, at *4 (N.D. Ga. May 8, 2023) (dismissing GINA claim based on COVID-19 vaccination requirement because plaintiff failed to show his "vaccination status meets th[e] statutory definition of 'genetic information'")).

Nor does Defendants' requirement that Plaintiff test periodically for COVID-19 and report the test results violate GINA. "Multiple courts have held that tests for COVID-19 do not analyze

genetic information and, therefore, do not "'qualify as genetic tests under GINA.'" Russo, 2024 WL 149131, at *6 (quoting McKinley v. Princeton Univ., No. 22-CV-5069, 2023 WL 3168026, at *3 (D.N.J. Apr. 28, 2023) (granting motion to dismiss plaintiff's GINA claim against employer)); see also, e.g., Taylor v. Vanderbilt Univ., No. 22-CV-465, 2023 WL 2398761, at *8 (M.D. Tenn. Jan. 23, 2023), report and recommendation adopted, 2023 WL 2390678 (M.D. Tenn. Mar. 7, 2023) (granting motion to dismiss plaintiff's GINA claim because plaintiff did not allege facts suggesting employer used COVID-19 tests to obtain genetic information).

Here, since Plaintiff has not alleged Defendants used COVID-19 tests to collect her genetic information, her allegations do not plausibly allege a GINA violation. Indeed, "requesting that Plaintiff, as required by state law, show proof of having received a COVID-19 vaccine" does not violate GINA. Russo, 2024 WL 149131, at *6. Accordingly, Plaintiff's GINA claim fails to state a claim for relief thereby warranting its DISMISSAL pursuant to Rule 12(b)(6).

E.   **HIPAA Claims**

Insofar as Plaintiff seeks relief under HIPAA,[12] these claims, too, fail. It is well-established there is no private

---

[12] The Court understands Plaintiff's reference to "HIPPA Law 1996" to be the Health Insurance Portability Accountability Act of 1996 ("HIPAA"). (See Compl. ¶ II.)

right of action under HIPAA.  See, e.g., Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020) ("HIPAA prohibits the disclosure of medical records without a patient's consent.  See 42 U.S.C. §§ 1320d-1 to 1320d-7.  But the statute does not expressly create a private cause of action for individuals to enforce this prohibition."); Iosilevich v. City of N.Y., No. 21-CV-4717, 2022 WL 19272855, at *4 (E.D.N.Y. Aug. 10, 2022) (dismissing HIPAA claim because "there is no private right of action under HIPAA" (citing Moussa v. Sullivan, No. 22-CV-3709, 2022 WL 2906177, at *3 (E.D.N.Y. July 22, 2022); further citation omitted)).  Therefore, Plaintiff's claims under HIPAA are DISMISSED pursuant to Rule 12(b)(6).

III. State Law Claims

Having dismissed all of Plaintiff's federal claims,[13] in its discretion, the Court declines to exercise supplemental jurisdiction over her remaining state law claims against the Defendants.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which

---

[13]  To the extent not explicitly stated herein, the Court has considered the balance of Plaintiff's arguments in opposition to the Dismissal Motion and find them to be without merit.

all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."); One Commc'ns Corp. v. J.P. Morgan SBIC LLC, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims."). Accordingly, Plaintiff's state law claims against the Defendants are DISMISSED WITHOUT PREJUDICE.

IV.  Leave to Amend the Complaint

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted); see also Bischoff v. Albertsons Cos., Inc., No. 22-CV-4961, 2023 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (denying plaintiff's request to amend "because '[t]he problem[s] with [plaintiff's] causes of action [are] substantive,' and 'better pleading will not cure [them]'"

34

(quoting <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (alterations in original))).

The Court has carefully considered whether leave to amend the Complaint is warranted here.  For the reasons set forth above, it is clear from the face of the Complaint that the defects in Plaintiff's claims are substantive and cannot be cured with better pleading.  Thus, further amendment of the Complaint would be futile.  Moreover, Plaintiff was previously granted leave to file an Amended Complaint by Order dated June 8, 2023 and elected not to do so.  (<u>See</u> Order, ECF No. 6.)  Consequently, further leave to file an Amended Complaint is denied.  Such denial is without prejudice to Plaintiff pursuing any valid claims she may have against the Defendants in state court.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Defendants' Dismissal Motion (ECF No. 18) is GRANTED as set forth above; and

**IT IS FURTHER ORDERED** that the Complaint is DISMISSED in its entirety as set forth above; and

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith; therefore, <u>in forma pauperis</u>

status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall: (1) enter Judgment accordingly in favor of Defendants; (2) mail a copy of this Memorandum and Order and the Judgment to the pro se Plaintiff at her address of record; (3) note such mailing on the docket; and (4) mark this case CLOSED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July 2, 2024
       Central Islip, New York

36